## Jacobi, Appellant, *v.* Zoning Board of Adjustment.

Argued November 26, 1963. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, O'BRIEN and ROBERTS, JJ.

*Thomas S. Howland,* with him *Howland and Hess,*
for appellants.

*James E. Gallagher, Jr.,* with him *James N. Peck,
Harry N. Moran, Jr., William F. Fox,* and *Fox, Differ,
DiGiacomo & Lowe,* and *Stradley, Ronon, Stevens &
Young,* for appellees.

OPINION BY MR. JUSTICE JONES, January 21, 1964:

This appeal challenges an order of the Court of Common Pleas of Montgomery County sustaining the grant by the Zoning Board of Adjustment of Lower Moreland Township (Board), of a special exception to permit the use of a property, located in an "L-Residential" zone, as a church, parochial elementary school, convent and rectory.

The applicant was the Roman Catholic Archbishop of Philadelphia who, in his archiepiscopal capacity, owns the subject property, which prior to its purchase by the archdiocese, was occupied as a family dwelling house and utilized as a farm.

The township zoning ordinance provides that in "L-Residential" zones a building may be erected or used for educational or religious purposes "when authorized as a special exception by the Board of Adjustment after public hearing". Having held such a hearing on the Archbishop's application, the Board granted the requested special exception and the Board's action was sustained by the Court of Common Pleas of Montgomery County.

Appellants' main argument is most peculiar in that it challenges the validity of the entire ordinance as not having been made in accordance with a comprehensive plan. True, the contention is confined to the issue that a special exception may not be granted by a first class township zoning board of adjustment when the Township has not established or adopted a comprehensive plan.[1] Nevertheless, in the absence of a comprehensive plan, not just the special exception provisions, but the entire ordinance falls: *Eves v. Zoning Board of Adjustment*, 401 Pa. 211, 164 A. 2d 7. To agree with appellants' contention in this respect we would necessari-

---

[1] The First Class Township Code, Act of June 24, 1931, P. L. 1206, §3102, 53 P.S. §58102.

ly have to invalidate the entire ordinance and, accordingly, the Archbishop could use the property without let or hindrance.

There is nothing in the record, however, which would support the argument that the ordinance was not adopted pursuant to a comprehensive plan nor (as was the case in *Eves*) is there the slightest showing of internal evidence from a reading of the ordinance itself that it was not so enacted. There is a presumption that the ordinance is valid and such presumption has not been overcome by appellants.

Appellants also contend that the Board abused its discretion and acted in an arbitrary manner in granting a special exception in this case, correctly stating the rule of law that where no additional testimony is taken before the common pleas court, the scope of that court's review is to examine the record to *determine* whether the Board was guilty of a manifest abuse of discretion or an error of law and, if so guilty, to set aside the Board's decision: *Blair v. Board of Adjustment*, 403 Pa. 105, 106, 107, 169 A. 2d 49; *Kotzin v. Plymouth Township Zoning Board of Adjustment*, 395 Pa. 125, 149 A. 2d 116.

Appellants argue that the Board was guilty of a manifest abuse of discretion in that it disregarded the standards set forth in the zoning ordinance for the grant of special exceptions. Section 1201(2) of the ordinance empowers the zoning board to grant special exceptions which are "herein expressly provided for, in harmony with the general purpose and intent of this Ordinance, with power to impose appropriate conditions and safeguards." Section 100 of the ordinance sets forth the "purpose and intent" as follows: "To promote the health, safety, morals and general welfare of the inhabitants of the Township of Lower Moreland by lessening congestion in the streets, securing safety from fire, panic and other dangers; providing adequate

light and air, preventing the overcrowding of land; avoiding undue concentration of population; facilitating the adequate provision of transportation, water, sewerage, schools, parks and other requirements; conserving the value of buildings; and encouraging the most appropriate use of land."

Appellants argue that the instant grant of the special exception is clearly detrimental, in light of the above standards, to the health, safety and general welfare of the inhabitants of the Township, citing the increase in services to be provided when no taxes will be derived from the church-school complex, sewage problems and that "many, if not most of those who will use and benefit by the church-school complex . . ." will come from the City of Philadelphia.

Implicit in appellants' argument is the thought that an applicant for a special exception has the burden of establishing that the proposed use will not adversely affect the health, safety, morals and general welfare of the community. On the contrary, once "the requisite facts and conditions detailed in the ordinance are found to exist" (*Eves,* supra, page 220), the applicant is "entitled to the special exception unless there was legally sufficient competent evidence to support a finding that the granting of such exception was adverse to the public interest" (*Good Fellowship Ambulance Club's Appeal,* 406 Pa. 465, 475, 178 A. 2d 578).

There can be no doubt but that the contemplated use of the land for a church-school building is the type of use contemplated as the subject of a special exception in an "L-Residential" district. The only question left to the Board's discretion, bearing in mind that "the power to conduct a hearing necessarily includes the authority to render a decision on the evidence presented" (*Katzin v. McShain,* 371 Pa. 251, 253, 89 A. 2d 519, 520), is whether there was a manifest abuse of discretion by the board in determining that such use was

harmonious (§1201(2) of the ordinance, supra) with the promotion of the health, safety, morals or general welfare of the township inhabitants (§100, supra).

We see no disharmony. As we pointed out in *Archbishop O'Hara's Appeal,* 389 Pa. 35, 55, 131 A. 2d 587, the conclusion drawn from appellants' argument "would exclude *any* school from this district, a conclusion contrary to the language of the ordinance. No property owner is misled in this respect for every person purchasing a home site or a home in this district does so with notice contained in the ordinance that some day a school, a church or a philanthropic institution might be erected in the neighborhood." The appellants apparently choose to be unmindful of the fact that both the court below and the Board attached conditions to the grant of the special exception and that these conditions—authorized by the ordinance—effectually guard against the evils foreseen by the appellants.

To be sure, there will be a loss in tax revenue and some increase in the cost of municipal services if the church-school is erected but such loss must have been foreseen by the township authorities when they allowed for the use of the property for such purposes by special exceptions. To say, as do the appellants, that such tax loss per se is detrimental to the general welfare, is to say that the legislature had no concern for the general welfare in providing tax exemptions for religious and educational institutions. So universal is the belief that religious and educational institutions should be exempt from taxation that it would be odd indeed if we were to disapprove an action of the zoning authorities consistent with such belief and label it adverse to the general welfare.

Finally, appellants argue that *Archbishop O'Hara's Appeal,* supra, is distinguishable in that in that case all of the students who would attend the school there

proposed would be drawn from the county in which the school was physically located and that by reason of the emphasis placed on the "general welfare" in the later cases of *Bilbar Construction Co. v. Easttown Township Board of Adjustment,* 393 Pa. 62, 141 A. 2d 851, *Best v. Zoning Board of Adjustment,* 393 Pa. 106, 141 A. 2d 606 and *Eves,* supra, the holding of *O'Hara* has been somehow overruled. If we understand this contention, the appellants say that the general welfare is jeopardized when children and churchgoers from Philadelphia County attend school and church in Montgomery County. The mere statement of such proposition constitutes its own refutation.

We have examined this record carefully and, from such examination, conclude that the Board very properly granted this special exception.

Order affirmed. Costs on appellants.

———

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

I concur in the result. However, in a case involving a petition or application for an exception, I believe that several prior decisions of this Court on the question of burden of proof are illogical and should be changed by this Court or by a legislative body. These cases expressly or impliedly held that the burden was on the Township or Board of Adjustment or those opposing the exception to prove that the *proposed exception* would adversely affect the public health or safety or morals and general welfare of the community.

This question is of such importance that a brief review of the law is necessary. No one has fought for property and other Constitutional rights as frequently and strongly as I have,* but I do not like to see the

———

* See, inter alia, *Lord Appeal,* 368 Pa. 121, 81 A. 2d 533; *Andress v. Zoning Board of Adjustment,* 410 Pa. 77, 188 A. 2d 709; *Rolling Green Golf Club Case,* 374 Pa. 450, 97 A. 2d 523; *Medinger Appeal,* 377 Pa. 217, 104 A. 2d 118; Concurring Opinion in *Key*

Court be illogical. However, several recent zoning decisions with which I strongly disagree, logically compel a different rule on the question of the burden of proof in a petition for an exception.

We must examine the language of each Act and of each Ordinance and apply that language to the facts of each particular case. Unfortunately, Courts too often examine only that portion of the Act or Ordinance which appears to be particularly controlling, without any consideration of the purpose, object and intent of, or the standards laid down by, the Act or Ordinance as set forth in other portions thereof.

The basic rights of a property owner are centuries old and are Constitutionally ordained and guaranteed* and he cannot be deprived thereof without just compensation.** In an end run around the Constitution, zoning has become a very popular Governmentally prescribed curtailment, deprivation and ofttimes blind erosion or unwitting destruction of the Constitutionally guaranteed rights of property. Since zoning is justifiable and Constitutional only if it is reasonably necessary to protect public health or safety or morals and general welfare, *isn't it logical* to hold that one who asks for an exception to a presumptively valid and Constitutional Act or Ordinance*** has the twofold burden of proving that his proposed building or proposed use (1) falls within a legislatively *excepted* per-

---

*Realty Co. Zoning Case*, 408 Pa. 98, 102, 182 A. 2d 187; Dissenting Opinion in *Bilbar Const. Co. v. Easttown Twp. Bd. of A.*, 393 Pa. 62, 77, 141 A. 2d 851; Concurring and Dissenting Opinion in *Best v. Zoning Board of Adjustment*, 393 Pa. 106, 119, 141 A. 2d 606.

   * Article I, §1, of the Constitution of Pennsylvania; Fifth Amendment to the Constitution of the United States.

   ** Article I, §10, of the Constitution of Pennsylvania; Fifth Amendment to the Constitution of the United States.

   *** *Daly v. Hemphill*, 411 Pa. 263, 270-271, 191 A. 2d 835, and cases cited therein; *Good Fellowship Ambulance Club's Appeal*, 406 Pa. 465, 470, 178 A. 2d 578.

missible building or use, and (2) that it is not detrimental to public health or safety or morals and general welfare! If this were not so, why wasn't the *excepted* and the (possibly) permissive building or use included in and as part of the zoning classification to which it is a possibly permitted exception. For example, where the owner of a proposed apartment building asks for an exception in a single family residential district, if all he has to prove is that his proposed building falls within a building use permitted by the exception, why wasn't *this excepted building* included in and made a part of *the zoning classification* to which it is an exception!

Since the majority Opinion holds that the Board instead of the petitioner has this burden of proof, I must concur in the result, and hope that future legislation will change or at least clearly specify where the burden of proof lies.

Mr. Justice COHEN joins in this concurring Opinion.