516 A.2d 420

In Re: Appeal of Gulf Oil Corporation from decision of Worcester Township Zoning Hearing Board. Worcester Township, Appellant.

Submitted on briefs July 15, 1986, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Philip R. Detwiler, Philip R. Detwiler & Associates, P.C.,* for appellant.

*Jerome B. Nulty,* for appellee.

OPINION BY JUDGE CRAIG, October 20, 1986:

In the present appeal, we must decide whether a provision of a township's zoning ordinance which restricts the hours of operation of gasoline service stations located in a commercial district is unconstitutionally discriminatory. The Court of Common Pleas of Montgomery County, Judge WILLIAM T. NICHOLAS presiding, held that such a provision was discriminatory and thus invalid. In view of the particular circumstances here, we affirm.

By appeal to the Worcester Township Zoning Hearing Board, the Gulf Oil Corporation challenged the validity of Article XI, section 1101(L) of the Worcester Township Zoning Ordinance of 1953, which requires gasoline service stations to close between the hours of 10:00 p.m. and 6:00 a.m.[1] Gulf Oil has contended that,

---

[1] SECTION 1101. Use Regulations. A building may be erected, altered, or used and occupied for any of the following purposes . . . :

L. Gasoline Service Stations when limited up to three bays and customary sales room and including sanitary toilet rooms, provided that any outdoor display of merchandise be kept within twenty-five

because this restriction does not apply to other businesses in commercial districts, the ordinance is arbitrary and discriminatory against service stations and therefore invalid.

The Worcester Township Zoning Hearing Board dismissed Gulf Oil's challenge, reasoning that the restriction imposed upon service stations was a valid exercise of the township's police power, "effectual in keeping the quiet, rural nature of the Township." The board also held that Gulf Oil lacked standing to challenge the ordinance because it was not a landowner as defined in the Pennsylvania Municipalities Planning Code.[2]

The Court of Common Pleas of Montgomery County reversed the decision of the board. The court held that Gulf Oil did have standing to bring the challenge. The court, in addition, held that the board committed an error of law when it concluded that the pertinent provision of the ordinance was a valid exercise of the township's police power.

According to the board's findings, Worcester Township is a township of sixteen square miles and has a population of approximately 4,500 people. The property in question is located in a zoning district designated as a commercial district, one of three commercial districts located in the township. An existing Gulf service station is located at the northeast corner of Skippack Pike and Valley Forge Road (see Sketch # 1, accompanying this opinion). The Gulf station is one of three service stations located at this intersection, which is known as the "Center Point" area of the township.

---

(25) feet of the building, or on the pump islands; and provided that between the hours of 10:00 P.M., and 6:00 A.M., prevailing time, it will be closed with no illumination evident excepting a dim night light indoors. Such stations may have one interior lighted non-moving plastic type sign of such height, design, size, intensity of illumination, and of such location as may be approved by the Board of Supervisors.

[2] Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10107(12).

Sketch #1

Gulf Oil leases the property from its current owners, Mr. and Mrs. Stephen T. Palmer. Gulf Oil, in turn, sublets the premises to Mr. Richard Knott, the current operator of the station.

## Standing

The initial question is whether Gulf Oil had standing to initiate the challenge of the township's zoning ordinance.

We agree with the trial court in its holding that Gulf Oil did have standing sufficient to bring this challenge. The trial court properly followed the rationale of *Metzger v. Zoning Hearing Board of the Township of Warrington*, 85 Pa. Commonwealth Ct. 301, 304, 481 A.2d 1234, 1236 (1984). We are satisfied that Gulf Oil retained sufficient rights in the property, by its sublease with the station's operator, so that it was "authorized to exercise landowner rights" and thus fell within the class of "landowner" as defined by the *Metzger* court and section 10107(12) of the Municipalities Planning Code.

## The Merits

Our scope of appellate review of the merits in cases of this nature is governed by the established principle that, where a trial court takes no additional evidence (as is the case in this proceeding), the findings of a zoning hearing board may not be disturbed if the findings are supported by substantial evidence. Our review is limited to a determination of whether the board's findings of fact and of law are supported by substantial evidence. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983); *Bilotta v. Haverford Township Zoning Board of Adjustment*, 440

Pa. 105, 270 A.2d 619 (1970); *Ferry v. Kownacki,* 396 Pa. 283, 152 A.2d 456 (1959).[3]

Furthermore, we must be guided by the general rule that a zoning ordinance carries a strong presumption of validity and a party seeking to challenge that validity bears an extremely heavy burden to invalidate the ordinance. *Bilbar Construction Co. v. Easttown Township Board of Adjustment,* 393 Pa. 62, 141 A.2d 851 (1958); *Sheetz Kwik Shoppers, Inc. v. Zoning Hearing Board of Huntingdon Borough,* 54 Pa. Commonwealth Ct. 601, 603, 423 A.2d 11, 12 (1980).

As Judge NICHOLAS correctly recognized in his opinion, the test of a zoning ordinance's constitutional validity, from a due process point of view, is whether the restrictions contained in the ordinance have a reasonable relation to the public health, safety or general welfare of the community. *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303, 314 (1926); *Van Sciver v. Zoning Board of Adjustment,* 396 Pa. 646, 152 A.2d 717 (1959); *Sheetz Kwik Shoppers,* 54 Pa. Commonwealth Ct. at 603, 423 A.2d at 13.

In reviewing the board's findings, our study of the record establishes that certain key findings are not supported by substantial evidence. The board found that the service station is "over-illuminated with light . . . with such intensity as to be bothersome and distracting to motorists." We find no testimony or evidence in the record to support such a finding by the board. On the contrary, the only testimony on the point, by a witness for Gulf Oil, was that the lamps at the service station were designed to direct light downward toward the service islands and entrance ramps.

---

[3] The trial court applied a standard which it felt permitted the findings of the board to be disturbed if the court found that the board committed an error of law or an abuse of discretion.

In its discussion, the board attempted to find justification for adoption of the hours-of-operation restrictions by the township supervisors. The board surmised that the supervisors adopted the restrictions in 1972 "to correct some evils perceived by the supervisors." The board's discussion on this topic rings with conjecture and, again, is not supported in the record.

We are satisfied that Gulf Oil presented sufficient evidence to raise the question of whether the closing restriction was reasonably related to the general welfare of the township. Gulf Oil thus shifted to the township the burden of showing the existence of such a reasonable relationship. *Sheetz Kwik Shoppers.* The record is silent regarding any attempt by the township to shoulder that burden.

This court agrees with the trial court in its conclusion that the hours-of-operation restriction is discriminatory in that it applies only to service stations. In his opinion, Judge NICHOLAS first looked at the township's Declaration of Legislative Intent (section 1100 of the ordinance)[4] as a basis for the validity of the restriction. He stated that:

---

[4]    SECTION 1100. Declaration of Legislative Intent. In expansion of the declaration of legislative intent contained in Article I, Section 101 of this Ordinance, it is hereby declared to be the intent of this Article, with respect to commercial zones, to establish reasonable standards for the height and size of buildings, the areas and dimensions of yards and open spaces, the provision of facilities to minimize traffic congestion, noise, glare, polution [sic], so to lessen the danger to the public safety and surrounding buildings values from traffic congestion, over-crowding of land, inadequate provision for water and sewage facilities and inadequate transportation, and to establish reasonable standards for a commercial zone suitable with the general character of the neighborhoods, which are of a predominantly coloni-

While it may be conceded that these goals have a relationship to the public welfare, there is no evidence that the hours-of-operation restriction of gasoline stations will prevent a greater degree of glare, noise, or traffic than would be generated by any other business allowed in the 'C' commercial district, such as a diner or convenience store, if operated 24-hours a day.

This statement, implicitly couched upon equal protection considerations, correctly reflects that, upon the record before us, there is no basis for treating service stations in Worcester Township differently from other businesses of a similar nature. We find nothing which justifies this unequal treatment imposed upon service stations.

Two Pennsylvania cases, brought to our attention by the township, support a rationale for different treatment of service stations, where ordinances subjected that class of use to proximity limits. These cases, *Mobil Oil Co. v. Town of Westtown*, 21 Pa. Commonwealth Ct. 295, 345 A.2d 313 (1975), and *Boron Oil Co. v. City of Franklin*, 2 Pa. Commonwealth Ct. 152, 277 A.2d 364 (1971), involved the validity of ordinances which limited the distances between two service stations. Both cases recognized that, for public safety reasons, a municipality may justifiably pass special regulations for service stations. However, the record here provides no public safety rationale for the limitation of hours of operation.

The Supreme Court of New Jersey has recognized the principle that a zoning ordinance with an hours-of-

---

al and historical type, and to allow a reasonable number and variety of uses for the convenience of the residents of the community suitable with the natural features of the land.

operation restriction may be valid if the restriction is reasonably tailored to meet a specific public good or public concern. *Quick Chek Food Stores v. Township of Springfield*, 83 N.J. 438, 416 A.2d 840 (1980).

*Quick Chek* involved a restriction on the hours of operation of businesses located in a Neighborhood-Commercial (N-C) zone. The township justified its restriction on the basis that the three N-C zones located within the township abutted residential areas, and the restriction was necessary to protect the privacy of those areas. In fact, the *Quick Chek* court noted that some residences existed in the zone where the appellant wished to locate its store. A peculiarity in *Quick Chek* was that the closing restrictions did not apply to pharmacies or restaurants. The restriction was upheld because the New Jersey court concluded that the restriction was reasonably tailored so as to serve a public good. We find no such justification or circumstances in the case before us to uphold the hours-of-operation restriction.

The trial court here relied on *Fasino v. Borough of Montvale*, 122 N.J. Super. 304, 300 A.2d 195 (1973), because it involved the invalidation of an hours-of-operation restriction for all retail businesses. In *Fasino*, the New Jersey Superior Court recognized that there may be a rationale for restricting a business' hours of operation where a clear danger to the public health or safety exists. *Fasino*, 122 N.J. Super. at 309, 300 A.2d at 203.

An Illinois case, *Bi-Lo Stations, Inc. v. Village of Aslip*, 22 Ill. App. 3d 514, 318 N.E. 2d 47 (1974), involved a zoning ordinance with an hours-of-operation restriction nearly identical to the Gulf Oil case. In *Bi-Lo*, the appellant challenged the constitutionality of a provision of the Village's zoning ordinance which re-

quired all service stations to close between the hours of midnight and 6:00 a.m. The restrictive provision was upheld in *Bi-Lo* because of the presence of evidence in the record which established that the provision was enacted to thwart midnight crime, which was proven to be more prevalent at service stations than at other businesses in the village. Such a public purpose was held to be a proper rationale for the special regulation of service stations.

Finding no evidence introduced by the township to justify its restrictive provision, we must conclude that the township failed to establish that the restriction as applied to service stations was reasonably related to the public health, safety or general welfare of the community. No valid public purpose was advanced as rationale for the restriction. Therefore, based upon the record before us, the decision of the court below is hereby affirmed.

ORDER

NOW, October 20, 1986, the order of the Court of Common Pleas of Montgomery County, dated January 3, 1986, is hereby affirmed.